This is the last case this morning. Graham v. Arctic Zone Iceplex Good afternoon, Your Honors. My name is Heather Falks, and I represent the Plaintiff Appellant James Graham in his case against his former employer, Arctic Zone Iceplex, referred to as AZI in the record. This case is on appeal from the District Court's granting of AZI's request for summary judgment. The plaintiff was hired by AZI to be head mechanic. He was injured in February 2015 during the course of that employment and that resulted in subsequent treatment through the workers' comp carrier. He was on leave, he came back, was under restrictions of sedentary work only and to not be driving anything at work. AZI provided the job of ice skate sharpening as his accommodation. And it is disputed as to whether or not that is a sedentary job. Mr. Graham asserts that that job requires him to stand. Why didn't he speak up about that? If he felt this accommodation wasn't sufficient, this interactive requirement applies to both employer and employee, why didn't he say something? Yes, and that was what the District Court's point was. And Mr. Graham did say something. In fact, Mr. Albee in his deposition admitted that they considered it insubordination when he complained about the ice skating job. He did not use the specific characterization of you're not accommodating me or this isn't sedentary work, but he complained that the ice skating job wasn't working for him. But there's a big difference between saying, I mean, that could be for any number of reasons. I don't like sharpening skates. I mean, he has to put, for purpose of the interactive process requirement, he has to put the employer on notice that he needs an accommodation because of his disability. Right. The employer was on notice that he needed an accommodation because they knew of his disability and they knew what the restrictions were via the workers' comp carrier who's receiving treatment through their carrier. So they were aware of what his restrictions were and what the disability was. Mr. Graham isn't legal counsel for himself, so he didn't use any specific language, but he did voice his case. Did he say, I can't sharpen skates because it requires me to stand and I need to sit? That's not legalese. Right. No, he didn't use those exact words. He complained about having to tell him, get back to work, so he'd go back to work. And when he pushed back, it was considered insubordination. In fact, it was even included in his termination notice as insubordination, the fact that he questioned doing the ice skating, ice skate sharpening job. So it's our position that that's an issue of fact as to whether or not the job was a sedentary job at all, whether it was an accommodation, whether or not... How difficult was sharpening skates? My understanding from it is you have to get the right angle in order for you to cut the ice appropriately and to maintain balance. And so my client explains that you have to stand in order to get the proper angle on the standing machine that sharpens those skates. At least that's what he testified under oath. Mr. Albee, who's the owner, and Mr. Johnson, who was the supervisor, testified that they've seen it done both ways. So as far as whether it's standing or sitting job. And so it's our position that that is an issue of fact as well as whether or not it was Mr. Graham's fault or AZI's fault that there was no interactive process engaged in. Additionally, in addition to our failure to accommodate claim, we also have failure or discrimination based on disability. And that's the bulk of a lot of the discussion in the brief because the notice of termination contains five items. And two of the items directly relate to Mr. Graham's work comp injury, subsequent disability, and restrictions. Item number one is he was demoted or position changed from head mechanic to knight mechanic as a result of his injury. When he questioned it, it was considered insubordination. The other item is what we just discussed, which was he challenged the standing up job of ice skate sharpening. And that was also considered insubordination. There's three other items, one of which our argument is insufficient. And that's the customer complaints. Mr. Johnson, who is Mr. Graham's supervisor, he testified under oath that those instances of customer complaints weren't a big deal. They weren't documented. There was no record of discipline. Even one of the customers frequently complains. And so Mr. Johnson didn't think it was an issue. If it was insufficient to warrant formal discipline at the time it occurred, months before termination, then it's insufficient to support a termination. So then we arrive at the only incident that happened on the date Mr. Graham was terminated. He was terminated October 15, 2015. And the incident that occurred was a Zamboni accident of sorts where he scraped the baseboards with the bottom or the blade of the Zamboni. This resulted in a piece of the baseboard being cut free and exposed. As a result, there had to be a repair done. Throughout litigation, and from day one, even in the termination notice, AZI has exaggerated the damage that was caused by that accident. Wasn't the issue, though, Mr. Graham allowing either children or other people on the ice too quickly versus the relative amount of the damages with the Comparator? Right. So, one, there's an issue of fact as to whether or not that even occurred. My client indicates that the wall was repaired before any customers had to come on the ice. The only time AZI brought it up was after the Comparator was discovered and it was told that the Comparator only caused minimal damage when it was discovered. The minimal damage was actually over $1,500, whereas my client's damage that was categorized as destroyed or damaged was actually only $148.50, and that's really actually items they had on the property already to fix the baseboards because it's often required to fix the baseboards. And so, at that point, AZI came up with the defense that, yes, there was somehow danger to customers. But I think it's an issue of fact as to whether or not there was actually any issue of customers, or any danger to customers. And given the shifting reasons given by AZI and some of the inconsistencies between the termination notice and the deposition testimony, that a fact finder could reasonably find that this was pretext and not believe the five items given by AZI. And therefore, we should be given the opportunity to present that issue to a jury. I'd like to reserve the rest of my time for rebuttal. Good afternoon, Your Honors. May it please the Court. Vincent Dantacchi on behalf of Defendant Appellee Arctic Zone Iceplex. I'd like to point out one issue that was not raised, or one key point, and that is the issue of whether a concussion even amounts to a disability. The appellant did not even raise this issue in their brief. The appellant's counsel merely referred to the district court assuming for the purposes of its ruling. However, Appellee has raised it in their brief on two occasions where we did dispute whether a concussion even amounts to a disability. And specifically, this court in the, I'm going to mispronounce it, Serednich versus Beverly Healthcare, LLC case from 2011 stated, temporary non-chronic impairments of short duration with little or no long-term or permanent impact are usually not disabilities. And it even goes on to say, including concussions. That's exactly what is at issue here. It's a transient injury which does not fall under the ADA. Our analysis should end there. There shouldn't be any more discussion. This does not fall under the ADA. However, to the extent that the court wants to consider whether the ADA is impacted here, we have to keep in mind that not every injury equates to a disability. Otherwise, any time anyone is injured on the workplace, you would have an ADA question. And that's just not what it's intended for. That's the realm of workers' compensation. That was a separate claim which is currently in state court when the district court decided to relinquish pendant jurisdiction. When we talk about, if we want to then consider whether we have pretext here, counsel brought up the issue of insubordination because he complained of skate sharpening or that there were customer complaints. And then we have the demotion and the Zamboni incident. We have to consider the timeline here. This individual was hired in December of 2014. He was terminated in October of 2015. That's 10 months. For approximately 3 of those months, he was not even at work. So in 7 months, he had at least 2 customer complaints. He was not timely performing his job duties. And then we have the complaint about sharpening skates. Well, what we have here is not him complaining that it's not meeting his accommodation or that he can't do it or he can't sit down as far as those workers' comp restrictions are concerned. He's complaining because he doesn't want to be sharpening skates. But this is all happening in a 7-month period. This court stated in Monroe v. Indiana Department of Transportation, 871 F. 3rd, 495, in determining whether an employer stated reason is pretextual, the question is not whether the employer stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge. Appellant, throughout this process, throughout this case, has basically argued this is not fair. But that's not the question. The question is whether they believed, Arctic Zone Iceplex believed, that at the time of his termination those 5 points, the bullet points in his termination notice, which is part of the record, were a justified reason for terminating him. Let's talk about the accommodation. Again, we're talking about a job restriction that is coming from his doctor for a work restriction related to workers' comp. Arctic Zone Iceplex disputes that this is a disability. In Appellant's brief, he argues that Arctic Zone recognized the disability or regarded him as having a disability because Floyd Johnson testified in his deposition that yeah, concussion, that's very serious, that's really bad. I think we all understand and realize in today's day and age, especially with everything you hear about football, that concussions are bad and they are dangerous. But they're not a disability. Unless you have repeated concussions, I think the medical evidence can show that you're going to recover. It's transient. And in this case, we know he recovered. But what's important about this is the only testimony in the record is that the only available position at Arctic Zone that met his restrictions was skate sharpening. The owner of the company even called the workers' comp case manager to make sure that he could do the skate sharpening job. And while Mike Albee and Floyd Johnson both testified that it can be done either sitting or standing, it does not negate the fact that it can be done sitting. That's the evidence in the record. And it's the only position. Under the ADA, an employer is not required to create a job. This would have been the only option to have him come back when he wanted to come back, when the doctor was allowing him to come back, was to put him in this position. The fact that he felt it was a better result with the skate sharpening to stand up does not change the fact that it can be done sitting down. Now, the issue of demotion has come up also. And I'll submit to this Court that that is a red herring. This is a small business, handful of employees, only two or three mechanics at any given time of the year. Or maintenance. I'm sorry, not mechanics. Maintenance individuals. One of which was James Graham. He was told when he was hired during the busy season, the peak season, you will be required to work nights. Mike Albee testified that the peak season is September to March. The only reason at the outset of his employment was that he was working days was because he was still training, still learning, still having to understand the system, understand the people, understand what would be required of him so that he can then ultimately work nights. But regardless of when he was working or what hours he was working, he retained the same pay, held the same position, maintenance, and title. Now, whether you want to call it night maintenance or night mechanic or head mechanic or head maintenance, it doesn't change the fact that he had the same pay with the same benefits. One thing I want to point out for this Court again has to do with the chronology of events. At any given point, if you want to look at the case of the discriminatory animus from Arctic Zone Iceplex, they had from February 13, 2015, when he was first injured, until August 12, 2015, when he was released without restrictions to fire him or to discriminate against him. They brought him back. They brought him when he had the restrictions. That lasted for several months. And even after he was without restrictions, they provided the framework that the doctor required, which was one week of half days, then another two weeks at, I think it was six hours per day, and then back to full-time work. And then it wasn't for another month and a half that they terminated him, and it was specifically on the night of the Zamboni incident. Now regardless of whether they were inarticulate about that incident, whether it was a whole day's worth of damage or an excessive amount of damage, you have all these factors, the customer complaints, the insubordination, and that incident that led to the termination. And I ask your honors to affirm the lower court's decision of summary judgment. The issue here is that the district court gave AZI the benefit of all inferences, and when there's anything in conflict, it was automatically granted to AZI as the benefit of the doubt. There are numerous issues here where AZI's stories, explanations, statements have changed. Most specifically, even in their own termination notice, they say that they changed his position because of his injury and subsequent disability. But under oath and a deposition, they say there was no change in position. If it was merely because they're a small company and they needed to move people around, then they could own that and say that in their deposition rather than now lying and saying there was no change in position when their termination notice clearly says there was, along with the exaggeration of damage. That's not required. Those things indicate there was pretext for discrimination. Those things should be left to the trier of fact to determine and not the district court judge to make those decisions. Because there are primarily issues of fact here and what is important and what they mean and why people did what they did. And that should be left to the trier of fact to determine. As far as, yes, it was a workers' comp claim. It wasn't Mr. Graham's fault he fell off the ladder and got hurt shortly after being hired. And to say that because it's a workers' comp, the ADA doesn't apply, well, that's ridiculous. Because any time there's going to be a work comp injury, it could be very severe, which of course the ADA is going to apply. So yes, there's a spectrum. And I did not address the disability issue because I'm appealing the district court's order and the district court order said for the purposes of its decision there was a disability. So I wasn't going to waste my briefing on that topic. If the district court felt that that was a topic that needed to be further fleshed out in its decision, then I would have addressed it. However, it's not something that needed to be addressed. Mr. Graham clearly had an injury that had restrictions that required accommodations, which in my opinion would fall under the ADA. But I did not brief that any further because the district court summarily decided that for the purposes of its decision, he was disabled. I would ask that you reverse the district court's finding and remand back for further decisions. Thank you. Thank you, counsel. Thanks to both counsel and the case is taken under advisement and the court will be in recess. Thank you.